SMITH, impleaded with BANTA, *ads*. PERRY and HOWELL.

1. A release of a creditor to a debtor, executed by an agent of the creditor, appointed for a particular purpose, will not discharge the liability of the debtor.

2. If an instrument of release is not sufficient to create a legal bar to an action, all facts collateral to and accompanying its execution are irrelevant to the issue, and should not be proved before the jury.

3. A person who receives a portion of the profits of a business, as compensation for his agency in it, does not thereby become a partner so as to authorize him to release debts due to his principal created through his agency.

4. If a debtor has knowledge of any fact which should lead him to doubt the general powers of an agent of his creditor, it is his duty to make reasonable inquiry into the character of the relation between them before he takes a release of his debt executed by the agent alone.

5. A power to execute an instrument under seal generally must be conferred by an instrument of equal solemnity.

6. It is no good ground for a new trial that the judge rejected pieces of testimony, which viewed abstractly might technically have been admissible, if it is manifest from the whole case that they were offered as introductory to an instrument in writing which of itself was not competent evidence in any aspect of the case.

7. No injustice could be done to the party by such rejection.

On rule to show cause.

Argued at June Term, 1860, before Justices OGDEN, HAINES and VAN DYKE.

*Vanatta* and *F. T. Frelinghuysen*, for rule.

*C. Parker, contra.*

OGDEN, J.  This cause was tried before a jury in Essex county, in the term of September, 1859, and a verdict rendered against the defendants in favor of Perry and Howell for the amount of their demand.  Some sixteen bills of exceptions were sealed during the progress of the trial on the application of the counsel for the defendants, which

bills were abandoned on the coming in of the *postea*, and all the objections that were made to the rulings of the justice have been presented and argued before this court upon the rule granted to show cause why the verdict should not be set aside.

The plaintiffs are merchants in the city of Newark, and their demand was for two bills of goods sold and delivered from their establishment, one in June, and the other in October, 1857, to the defendants, trading under the name of J. V. S. Banta.

It appears in the state of the case that, in addition to their regular clothing business, the plaintiffs conducted the jobbing business in *piece goods*, and that they employed one John Boylan, who sold their goods by samples, he sending in orders to them, and they supplying and forwarding the goods. This jobbing business was done in the name of " *John Boylan, agent,*" and a separate set of books was provided and kept for it by the general book-keeper of the establishment.

The two bills rendered for the goods were put in evidence, dated at Newark, and made out " Mr. J. V. S. Banta to John Boylan, agent." It was testified, by Mr. Perry, that Boylan, for his services in that business, received a compensation equal to one-half of the profits, the plaintiffs furnishing all the capital, and that the business had been so carried on from the year 1855. It also appeared in proof that when the goods were furnished the plaintiffs understood that Smith was a partner with Banta.

The counsel for the defendants attempted to resist the liability of Mr. Smith, by showing that he had been lawfully released from the payment of the debt; and all the objections to the rulings of the justice are grounded upon his refusal to admit the testimony which was offered for establishing the release as a defence. The firm of J. V. S. Banta becoming embarrassed, both Banta and Smith executed a deed of assignment for the benefit of their

creditors, dated on the 26th day of December, 1856. The debt of $268.48, now in controversy, was put down by Banta in his list of creditors, to the name of John Boylan, without the addition of "agent." The assignee took possession of the effects of the assignors, and prepared an inventory, as required by the statute; but while progressing in the discharge of his duties, a paper writing was presented to him purporting to be signed by all the creditors of the assignors, requesting and authorizing him to re-assign the property of the firm to J. V. S. Banta *individually*. The instrument was dated January 19th, 1858, and had the individual name of John Boylan set to it with other creditors, but not the names of Perry and Howell.

Mr. Smith was not actively employed in the business ·conducted by the firm of J. V. S. Banta, but living some four miles or more from their store, he intrusted their affairs chiefly to his partner's management. An arrangement was made by them, after the assignment, whereby Smith consented that Banta should have the control and disposal of the partnership effects, if he, Smith, could be discharged from all liability on their joint indebtedness, and Banta agreed to procure for Smith a release from all the creditors of the firm. Subsequent to and in execution of such agreement, a paper writing under seal, dated January 22d, 1857, was delivered by Banta to Smith, purporting to be a release to him from all the creditors. That paper likewise had the individual name of John Boylan to it, but not the names of Perry and Howell. It was proved that when Banta bought the goods, upon his negotiation with Boylan, he knew that Boylan was an agent for some person or persons, but the name of his principal was not asked for nor disclosed.

Mr. Perry testified that Banta applied to Boylan for a release to Smith, and that they together came to him, and one or the other of them asked him to execute the release in behalf of the firm; and that he refused to do so be-

cause he thought the debt was then in a better shape, as he declined taking Banta's note for the claim.

Mr. Banta testified that after the execution of the assignment by himself and Mr. Smith, and before the application to Mr. Boylan for the release, he learned that Boylan was the agent of Perry and Howell. Mr. Perry having refused to execute the release, and Banta having subsequently taken and delivered the paper writing to Smith with Boylan's individual signature and seal to it, the simple question for adjudication is, whether the justice erred in rejecting *all* testimony offered by the defendants for giving efficacy to the release as a discharge of Smith from his liability for the payment of the claim of the plaintiffs. Although several distinct propositions were ingeniously presented to the justice, yet they all looked to the establishment of a defence through the release; and if the instrument itself could present no legal bar to a recovery, all the collateral facts offered were irrelevant to the issue.

The grounds taken by the counsel for the defendants were two-fold—first, that Boylan, as agent of his undisclosed principals, had authority to bind them by the release; and second, that he was a partner in *the jobbing business of piece goods,* and was thus authorized to act in the premises, and to execute and deliver the instrument in his individual name. The agreement which was entered into for regulating the compensation of Boylan could not make the proceeds of the sale of the piece goods, which were obtained by the separate property of the firm of Perry & Howell, the joint property of the three, Perry, Howell, and Boylan. Perry & Co. alone remained liable for the price of the goods purchased by them; and it would be contrary to the intention of the parties to give to Boylan, who was entitled to an interest in the profits of a sale, an interest also in the property itself. The persons who furnished all the capital, and made themselves responsible for all the debts arising out of the adventure

(surrendering nothing but a share in the profits as a compensation to their employee) should be entitled to the control over the gross proceeds. In this case the agent, or person beneficially interested in the profits, in the face of the express refusal of one of his principals so to do, undertook to release a debtor from the payment of his debt for the stock itself. The doctrine established in the case of *Smith* v. *Watson and Locke*, 2 *Barnwell and Cresswell* 401, fully sustains the foregoing propositions.

The remaining question is, whether Boylan, as a mere agent, was clothed with power to execute the release.

It seems to me that this is answered by a statement of the legal proposition, that generally a power to execute an instrument under seal must be conferred by one of equal solemnity. There was no pretence in the case that Boylan had any authority in writing from Perry & Co. His agency was limited, and was created by parol. He was to find purchasers and to sell goods by sample for the firm of Perry & Co., and he was necessarily clothed with such powers as were required for executing his agency, and with no greater powers. The right to release a debt due to his principals, contracted through him as agent, was not incident to his delegated authority to find purchasers and to sell by sample.

Banta, who was the partner of Smith, and in that relation his agent, was fully apprised, from the conference which Boylan had with Perry in his presence, in which the latter refused to execute the release, that Boylan might not be a principal with powers. He ought, at least, to have made further inquiry, if necessary, into the nature of the relation which Boylan held to the house of Perry & Co., and he should not, after that interview, have dealt with him as a principal.

It may be true that some of the pieces of rejected evidence, viewed abstractly, might, when offered, technically have been admissible; but as the manifest object of the defendant was with them to prepare the way for the in-

troduction of the release, or indirectly to get it before the jury, and as that instrument would not be competent evidence in any aspect in which the case could finally have been presented, I am of opinion that justice was done upon the trial, and that no substantial reasons have been presented to this court for setting aside the verdict. Mr. Smith was prejudiced by his allowing the property of the partnership to pass under the *absolute* control of Banta; but he was misled by the assumption of power by Banta, and not by any deception practiced upon him by these plaintiffs, or by either of them.

The rule to show cause should be discharged, with costs, and judgment be entered on the *postea*

HAINES, J., concurred.

VAN DYKE, J., (dissenting.) This suit is brought to recover the price of two bills of goods, amounting to the sum of $268.48, alleged to have been sold by the plaintiffs to the defendants. That the goods went from the plaintiffs' store, and were received by the defendants, or one of them, is conceded, nor is there any question as to the price. But the defendant, Smith, who alone defends the suit, sets up as a defence that the goods were not purchased of the plaintiffs, but of one John Boylan, who traveled about the country selling articles of the kind, and who sometimes added the letters "ag't" to his name when signing bills, receipts, &c., and sometimes did not; but who never, until long after the delivery of the goods in question, made known to the defendants that he was the agent of the plaintiffs, or of any one else, further than the letters "ag't" added to his name would indicate. That some time after the delivery of the goods, the defendants became embarrassed in their business, and on the 26th day of          , 1856, they made an assignment to Phineas F. Tuttle of all their property for the benefit of their creditors, pursuant to the statute; that in the list of cred-

itors annexed to such assignment the said John Boylan was
made a creditor, the defendants knowing of no one else to
whom they were indebted for the bills of goods referred
to; that some time afterwards, and before much had been
done by the assignee, two papers were signed by all the cred-
itors, one requesting the assignee to reassign and reconvey
all the property of the firm to the defendant, Banta,
alone, and the other was a release discharging and exoner-
ating the defendant, Smith, from all liability to pay
these debts of the firm; that in consequence of the ex-
ecution and delivery of the paper by the creditors releasing
Smith from the payment of the debts, he, Smith, agreed that
the property of the firm should be so conveyed by the as-
signee to Banta, which was done, he, Banta, undertaking to
pay such debts, and the creditors agreeing to receive him
alone as their debtor; that the said John Boylan signed both
these papers, and that, as a consequence, Smith became dis-
charged from all obligation to pay for these two bills of
goods.

This is briefly and substantially the defence offered by
Smith, the defendant, and which the papers offered and
the questions asked by the defendants' counsel were in-
tended to prove; but all these papers, and all, or nearly
all of these questions were overruled by the court, and
no part of this defence was allowed to be proved.
The questions were put in a variety of forms, and the
papers were offered at different stages of the proceeding,
but all were overruled. I am not able to sustain this ruling
on the part of the court. It seems to me that if the defend-
ant could have proved these facts, which he offered to
do, and which we are now bound to presume he could have
done, they should have operated as a perfect defence to the
action, and he should have been permitted to do so, and
the denial of this right and privilege was consequently
wrong.

The reason for overruling this defence, so far as I can
discover it, is because it appeared on the trial, by the evi-

dence of Nehemiah Perry, one of the plaintiffs in the case, that the goods in question in fact belonged to them, and were sold by John Boylan as their agent, and that they, the said plaintiffs, had never signed either of the said papers referred to nor authorized it to be done. Admitting these facts to have been sworn to, I do not think the court was at liberty to assume, as a settled question, that they were so certainly true as that no evidence could be received to explain, qualify, or contradict them ; but if it is admitted to be all true, and proves the agency of Boylan, which does not yet appear to be discontinued, it was certainly proper to prove all what that agent said and did in relation to the sale of the goods and the collection of the money, the agency never having been revoked, and the principals never having interfered to prevent the arrangement, although they were aware of all that was going on, the agent, in fact, signing the papers after consulting with them on the point, and after Banta was aware that such consultation had taken place.

If the agent was authorized to sell the goods, he was authorized to collect the money ; to collect it in piecemeal, to grant further time, to take other securities, and make new arrangements for its payment. This he did. The parties had assigned, and the debt was rendered doubtful. He and the other creditors arranged to have the property all returned to the active partner only, and to release the other. This arrangement was not fraudulent, was in good faith toward his principals, was acquiesced in by all the other creditors as probably advantageous, and as the plaintiffs knew of the proposition, and did not interfere to prevent it, I think they are and should be bound by it.

But, without intending to express a very definite opinion on the merits of the case—for I cannot well do so in the absence of the defendants' evidence—I am quite satisfied, in any aspect of the case, whether it was offered to conflict with the evidence of the plaintiffs, or to establish

such a state of things as to make the alleged agent a partner, or to make him such an agent as that his acts would certainly bind his principals, the plaintiffs, that the evidence ought to have gone to the jury under a proper and discriminating charge from the court.

I think, therefore, that the verdict should be set aside, and a new trial ordered.